## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROBERTO ANTONIO JACKSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-07-316-D** |
| | ) | |
| **CHARLES RAY, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. United States District Judge Ralph G. Thompson referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).[1] The Respondent has filed a response to which Petitioner has replied. Thus, the merits of the petition are at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions for two counts of possession of a controlled dangerous substance with intent to distribute after former conviction of a felony, obtained after a bench trial on stipulated facts, and for which he was sentenced to concurrently running 30-year terms of imprisonment. Case No. CF-2003-11, District Court of Texas County, Docket; Petition, p. 2.[2] On direct appeal the Oklahoma Court of Criminal Appeals affirmed Petitioner's convictions and sentences in a summary opinion. Jackson v. State, No. F-2003-1313, (Okla. Crim. App. Feb. 17, 2005) (attached to Response

---

[1] Following Judge Thompson's retirement, the action was reassigned to United States District Judge Timothy D. DeGuisti.

[2] The page numbers referenced for the petition are the pre-printed page numbers in the upper right hand corner of the petition. Thus, page two is actually the first page of the petition.

as Ex. 3); Petition, p. 3.  Petitioner applied to the trial court for post-conviction relief which was denied.  Case No. CF-2003-11, District Court of Texas County, Docket; Petition, p. 4, Response, Exs. 4-5.  Petitioner appealed the denial to the Oklahoma Court of Criminal Appeals which affirmed the trial court's decision.  Jackson v. State, No. PC-2006-1034 (Okla. Crim. App. Oct. 17, 2006) (attached to Response as Ex. 6).

Petitioner raises seven grounds for relief.  In Ground One, he alleges that his multiple convictions arising out of one course of conduct violate the prohibition against double jeopardy.  Petition, p. 6.  In Ground Two, Petitioner claims that the trial court erroneously denied his motion to suppress.  Id. at 7.  Petitioner contends in Ground Three that his sentence is disproportionate and excessive.  Id. at 9.  In Ground Four, Petitioner claims that he was denied due process in connection with his state post-conviction proceedings.  Id. at 11.  Petitioner alleges in Ground Five that his trial counsel rendered ineffective assistance.  Id. at 14(a).  In Ground Six, Petitioner contends that he is actually innocent.  Id.  Finally, in Ground Seven, Petitioner claims that appellate counsel rendered ineffective assistance.  Id. at 14(b).

I.     **BACKGROUND**

On January 17, 2003, Oklahoma Highway Patrol Trooper Jeff Steelman noticed a white Dodge sedan traveling in the far left lane of Highway 54 at a speed slower than the usual rate of traffic.  Preliminary Hr'g Tr. 15 (March 19, 2003) ("Tr. I"); Mot. Hr'g. Tr. 14-15 (Oct. 24, 2003) ("Tr. III").  Believing that the car's speed was impeding the flow of traffic, Trooper Steelman initiated a traffic stop.  Tr. I 23-24; Tr. III 16-18, 58-59, 77-78.  Trooper Steelman approached Petitioner, the car's driver, informed him why he had been

pulled over, and asked him to produce a driver's license and proof of vehicle ownership. Tr. I 24, 26; Tr. III 29, 62-63.  Petitioner provided Trooper Steelman with his California driver's license and a rental contract for the sedan.  Trooper Steelman then asked Petitioner to accompany him to his squad car while he drafted a written traffic warning. Tr. I 24, 26; Tr. III 26, 33-34.

While in the squad car, Trooper Steelman asked Petitioner where he was headed. Petitioner replied that he was going to Kansas but was unsure about which town because he was dropping off a friend, his passenger and eventual co-defendant, Frederick Scott. Tr. I 26, 35; Tr. III 75.  Trooper Steelman read over the rental contract for the sedan and noticed that Petitioner had not rented the car, was not listed as an authorized driver, and that the vehicle was restricted to use in Nevada.  Tr. I 27; Tr. III 41, 63, 76.  Trooper Steelman checked the validity of Petitioner's driver's license and for outstanding warrants.  Tr. I 27.  After learning that Petitioner's driver's license was valid and that there were no warrants for his arrest, Trooper Steelman asked Petitioner a few more questions about his passenger and their trip to Kansas.  Tr. I 27-29.

After his conversation with Petitioner, Trooper Steelman exited his vehicle and approached Scott to inquire about the trip.  Tr. I 29.  While Trooper Steelman questioned Scott, Trooper Brown, a canine handler, arrived.  Id.  Trooper Steelman informed Trooper Brown that he thought Petitioner appeared nervous, he had identified some inconsistencies between Petitioner and Scott's versions of their travel plans, and the sedan was rented, but the renter was not present.  Tr. I 30, 69; Tr. III 61-62.  Trooper Steelman returned to his vehicle to check for warrants on Scott, conduct a follow-up

conversation with Petitioner, and finish issuing the written warning to Petitioner.  Tr. I
33.  Trooper Brown listened to Trooper Steelman's conversation with Petitioner and
decided to have his canine screen Petitioner's car while Trooper Steelman awaited the
results of the warrants check on Scott and completed the traffic warning.  Tr. I 30, 33, 59,
69; Mot. Hr'g Tr. 38 (Oct. 16, 2003) ("Tr. II").  Because the canine alerted to the presence
of drugs, Trooper Brown obtained Petitioner's consent to search the car and placed Scott
in Trooper Steelman's vehicle with Petitioner.  Tr. I 33-34, 71-73; Tr. II 34, 45, 64; Tr. III
42-43.  Troopers Steelman and Brown began to search Petitioner's car and discovered two
blue bundles containing a total of approximately 118 grams of marijuana and one white
bundle containing approximately 100 grams of cocaine base stuffed in an area near the
glove box underneath the dashboard.  Tr. I 36, 41-43, 73-78, Ex. 2; Tr. II 34, 47-49; Tr. III
45-46.  The officers also discovered three packages of small baggies in the back seat.  Tr.
I 36; Tr. II 43-44; Tr. III 53.

Initially, Petitioner and Scott were charged with one count of trafficking in illegal
drugs and one count of possession of a controlled dangerous substance with intent to
distribute, both after the former conviction of two felonies. Case No. CF-2003-11, District
Court of Texas County, Docket.  They filed motions to suppress the marijuana and
cocaine base discovered in the car which were denied.  Id.; Tr. II 11; Tr. III 143.
Thereafter, Petitioner and Scott waived their rights to a jury trial and elected to proceed
with a bench trial. Tr. III 144, 151; Stipulation Hr'g Tr. 4 (Nov. 18, 2003) ("Tr. IV").  On
the eve of trial, Petitioner and Scott, through counsel, stipulated to facts sufficient to
support convictions for two counts of possession of a controlled dangerous substance

4

with intent to distribute after former conviction of one felony.  Tr. IV 5-8, 17, 19-21.  The State, in turn, amended the first count to reflect a charge of possession of a controlled drug with intent to distribute, in lieu of the trafficking offense that had been charged in count one.  Id. at 5.  The State also agreed to allege only one prior felony conviction instead of two for purposes of sentence enhancement.  Id.  The trial court denied the motion to suppress and found Petitioner and Scott guilty based upon the stipulation to the facts elicited during the preliminary hearing and at a hearing on their motions to suppress, and sentenced them in accordance with the State's recommendation. Id. 28-30, 32-33.

## II.   STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct  governing  legal  principle  from  Supreme  Court  decisions,  but  unreasonably

applies that principle to the facts of the petitioner's case.  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result.  Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003).  A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law."  Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

III.    **DISCUSSION**

   A.    **DOUBLE JEOPARDY**

In Ground One, Petitioner contends that his "multiple convictions arising out of one course of conduct" violate the prohibition against double jeopardy.  Petition, p. 6 (capitalization altered).  He explains that his convictions were based upon proof of the same basic elements, namely (1) knowing, (2) possession of, (3) a controlled dangerous substance, and for that reason, his conduct could only support one conviction for possession of a controlled dangerous substance with intent to distribute instead of two. Brief in Support, pp. 4-5.

On direct appeal, the Oklahoma Court of Criminal Appeals rejected Petitioner's double jeopardy argument. Citing its decisions in <u>Watkins v. State</u>, 829 P.2d 42 (Okla. Crim. App. 1991) and 855 P.2d 141 (Okla. Crim. App. 1992) (op. on reh'g), the Court of Criminal Appeals remarked that Petitioner's two convictions for possession of a controlled dangerous substance with intent to distribute did not violate the prohibition against double jeopardy because "[t]he possession crimes were separate and distinct as the drugs were found in different packages within the car." <u>Jackson v. State</u>, No. F-2003-1313, p. 2 n.2.

Respondent contends that Petitioner's claim is meritless because the Oklahoma Court of Criminal Appeals' decision is not contrary to or an unreasonable application of clearly established federal law. Response, pp. 5-7. Respondent argues that the Court of Criminal Appeals effectively applied <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932), in which the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Respondent contends that Petitioner's convictions were based upon proof of different facts because "the cocaine base count and the marijuana count each required proof of a fact the other did not, i.e. the possession of the cocaine base or marijuana . . . ." Response, p. 6.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits a state from imposing "multiple punishments for the same offense." <u>Brown v. Ohio</u>, 432 U.S. 161, 165 (1977) (quotation

omitted).   Federal habeas review of a multiple punishment double jeopardy claim is limited to determining whether the sentencing court imposed a greater punishment than the legislature intended.   See id. ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."); see also Dennis v. Poppel, 222 F.3d 1245, 1251-53 (10th Cir. 2000) (looking to legislative intent to evaluate a multiple punishment double jeopardy claim). The federal courts are "bound by a state court's determination of the legislature's intent" in deciding whether a state legislature intended to prescribe cumulative punishments for a single incident.   Cummings v. Evans, 161 F.3d 610, 615 (10th Cir. 1998) (quotation omitted).   Thus, if the highest court of a state determines that the legislature intended to punish separate offenses cumulatively, a federal habeas court must defer to that conclusion.   Id.   Similarly, where the state legislature intended to punish conduct as distinct offenses, separate sentences are constitutionally permissible.   Cf. Albernaz v. United States,   450 U.S. 333, 344 (1981).

Respondent's assertions are correct in part.   It is true that in Petitioner's direct appeal the Oklahoma Court of Criminal Appeals applied Blockburger by relying on its Watkins opinions.   In Watkins the Court of Criminal Appeals clarified that the "same evidence" test established in Blockburger should be used to determine whether multiple punishments stemming from a single transaction violate the prohibition against double jeopardy when the charges are combined in a single prosecution.   855 P.2d at 142; see also Dennis, 222 F.3d at 1251, 1253.

8

However, Respondent also contends that Petitioner's two convictions for possession of a controlled dangerous substance with intent to distribute rely on proof of different facts. Petitioner's convictions are premised upon a violation of Okla. Stat. tit. 63, § 2-401(A) which provides in relevant part: "it shall be unlawful for any person . . . [t]o . . . possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance . . . ."  The Oklahoma Court of Criminal Appeals has explained that section 2-401(A) sets forth "the substantive criminal prohibition, i.e. it is unlawful for any person to possess with the intent to distribute '*a controlled dangerous substance*.'" Watkins, 855 P.2d at 142 (emphasis in original).  The punishment for a conviction under section 2-401(A) is "based on the type of controlled dangerous substance . . . involved in the offense . . ." however, "the statutory prohibition does not distinguish between types or classifications of drugs . . . ."  Id.  Accordingly, a violation of section 2-401(A) is established with proof of possession of "a controlled dangerous substance" which is defined as "a drug, substance or immediate precursor in Schedules I through V of the Uniform Controlled Dangerous Substances Act." Okla. Stat. tit. 63, § 2-101(8).  It appears that contrary to Respondent's argument, the Oklahoma Court of Criminal Appeals has held that the type of controlled dangerous substance is not an element of the offense; instead it bears only on punishment.  See Watkins, 855 P.2d at 142; see also Dennis, 222 F.3d at 1252-53.  As the Oklahoma Court of Criminal Appeals has explained:

> While we recognize the Oklahoma Legislature has the power to create separate penal provisions prohibiting different acts which may be committed at the same time, it was not exercised in the passage of the provisions of Section 2-401(A)(1) as this statute applies to a "controlled dangerous substance".

Watkins, 855 P.2d at 142.

Nevertheless, the Oklahoma Court of Criminal Appeals determined it was permissible to predicate Petitioner's two convictions for violating section 2-401 upon his simultaneous possession of marijuana and cocaine base in the dashboard of his car.  The Court of Criminal Appeals noted that the convictions were for "separate and distinct" crimes because the cocaine and marijuana were "found in different packages within the car." Jackson, No. F-2003-1313, p. 2 n.2.  In the Oklahoma Court of Criminal Appeals' view, the Oklahoma Legislature has authorized multiple punishments for possessing different types of controlled dangerous substances if the controlled dangerous substances are packaged separately, but not where they are held in a single container.  Watkins, 829 P.2d at 43, 855 P.2d at 142; Lewis v. State, 150 P.3d 1060, 1062-63 (Okla. Crim. App. 2006) ("Watkins dictates that Appellant's one act of possessing cocaine and heroin in a single container constituted but one violation of the drug trafficking statute, punishable only once . . . ."); cf. Trim v. State, 909 P.2d 841, 843 (Okla. Crim. App. 1996) (following Watkins and vacating two of three convictions for the sale of obscene magazines arising out of a single transaction); see also Hunnicutt v. State,755 P.2d 105, 110-11 (Okla. Crim. App. 1988) (vacating one conviction for attempting to knowingly conceal stolen property based upon the purchase of two stolen pistols contained in a sack).  As the Oklahoma Court of Criminal Appeals' conclusion that Petitioner's multiple punishments are legislatively authorized is a highest state court's interpretation of state law, it is entitled to deference.  See Boyd v. Ward, 179 F.3d 904, 917 (10th Cir. 1999) (recognizing that federal habeas courts must defer to state court interpretations of state law as long as the conclusion is not "an unreasonable

determination of the facts in light of the evidence presented." (quoting § 2254(d)). Accordingly, the issue presented in Ground One does not demonstrate Petitioner's entitlement to federal habeas relief.

## B.    DENIAL OF MOTION TO SUPPRESS

In Ground Two, Petitioner contends that the "trial court erred in overruling [his] motion to suppress" the drugs discovered in his vehicle.  Petition, p. 7 (capitalization altered).  He alleges that Trooper Steelman unreasonably detained him beyond the purpose of the original traffic stop in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.  Brief in Support, p. 6.

The Oklahoma Court of Criminal Appeals resolved this claim against Petitioner on direct appeal, finding that the stop of Petitioner's vehicle was proper and during the "reasonable detention, probable cause to search the vehicle arose and a proper search was conducted."  Jackson, No. F-2003-1313, p. 2 n.3.

Respondent argues that the Court of Criminal Appeals' resolution of Petitioner's claim was not contrary to or an unreasonable application of Florida v. Royer, 460 U.S. 491, 506 (1983), where, according to Respondent, the Supreme Court noted "in dicta that a positive result from a dog sniff creates probable cause for a search."  Response, p. 8. Respondent makes this argument even though the Tenth Circuit Court of Appeals has repeatedly admonished that the only federal law relevant to habeas corpus petitions is "clearly established federal law as determined by decisions, not dicta, of the Supreme Court."  Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005) (quotation omitted); see also Anderson v. Mullin, 327 F.3d 1148, 1153 (10th Cir. 2003) (explaining that the relevant

inquiry in a §2254 proceeding "begins and ends with the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.") (citations and quotations omitted)).

However, there is clearly established Supreme Court precedent applicable to Petitioner's argument.  In Illinois v. Caballes, 543 U.S. 405, 407 (2005), the Supreme Court considered "whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop."  Noting that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission," the Supreme Court held, approximately three weeks before the Oklahoma Court of Criminal Appeals issued its decision in Petitioner's appeal, that "a dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."  Id. at 407, 410.

But instead of evaluating whether the Oklahoma Court of Criminal Appeals' conclusion was contrary to or an unreasonable application of Caballes, Petitioner's claim is easily resolved on a basis that Respondent has not advanced.  The Supreme Court also has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell 428 U.S. 465, 494 (1976) (footnotes omitted); accord Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992).

12

The record of the state court proceedings demonstrates that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim.  His Fourth Amendment challenge to the search of his vehicle was presented at preliminary hearing and again to the trial court in a motion to suppress and was resolved by reference to the principles of governing federal law after the trial court held a full evidentiary hearing.  Case No. CF-2003-11, District Court of Texas County, Docket;  Tr. II 3; Tr. III 3, 129-43.  Further, as noted, it was also presented on direct appeal to the Oklahoma Court of Criminal Appeals. Accordingly, this claim does not warrant federal habeas relief.  See Smallwood v. Gibson, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations because the "petitioner's appellate counsel presented the issue to the [Oklahoma Court of Criminal Appeals] on direct appeal."); Chavez v. Rodriguez, 540 F.2d 500, 502 (10th Cir. 1976) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of Stone v. Powell").

### C.   DISPROPORTIONATE AND EXCESSIVE SENTENCE

As his third ground for relief, Petitioner contends that his 30-year sentences are "so disproportionate and excessive under the circumstances of this case that it should shock the conscience of this Court."  Petition, p. 9 (capitalization altered).  Petitioner concedes that his sentences are within the statutorily prescribed range but argues that federal habeas relief should be granted because "the punishment does not bear a direct relationship to the nature and circumstances of the offense."  Id.

Considering this claim on direct appeal, the Oklahoma Court of Criminal Appeals held that Petitioner's sentences were not excessive.  Jackson, No. F-2003-1313, p. 2. Respondent argues that the Oklahoma Court of Appeals' determination of Petitioner's claim by reference to state law, Jones v. State, is not contrary to or an unreasonable application of clearly established federal law.  Response, p. 9.  In Jones, the Court of Criminal Appeals held that a sentence should be modified if it is "so greatly disproportionate to the crime itself that it shocks the conscience of the Court," and suggested that sentences falling within statutory limits will rarely, if ever, meet this standard.  965 P.2d 385, 386 (Okla. Crim. App. 1998).

The Eighth Amendment proscribes "gross disproportionality" between the crime committed and the punishment imposed.  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); see also Hawkins v. Hargett, 200 F.3d 1279, 1281-82 (10th Cir. 1999).  In reviewing a sentence for gross disproportionality, a federal habeas court should be reluctant to "interfere with the legislative determination of an appropriate sentence range."  Hawkins, 200 F.3d at 1285.  If an initial comparison of the offense and the sentence does not lead to an inference that the punishment is grossly disproportionate to the crime, a federal habeas court's examination of the sentence imposed ends.  See id. at 1282; see also United States v. Gurule, 461 F.3d 1238, 1247 (10th Cir. 2006).

Petitioner's concurrently running 30-year sentences are not grossly disproportionate to the offenses committed.  Petitioner is a recidivist offender and was caught possessing with intent to distribute 97 grams of cocaine base and 109 grams of marijuana.[3]  Tr. IV 19.

---

[3] The quantity of drugs that Petitioner stipulated to possessing is slightly lower than the amount that the officers testified they discovered.  Compare Tr. IV 19., with Tr. I 41.

Since the Supreme Court has determined that a sentence of life imprisonment without the possibility of parole is not grossly disproportionate to a first-time offender's conviction for possession of 650 grams of cocaine, and because it is constitutionally permissible to punish recidivists more harshly than other offenders, Petitioner's sentence cannot be characterized as grossly disproportionate. See Gurule, 461 F.3d at 1247-48. Accordingly, Ground Three states no viable basis for federal habeas relief.

### D.    STATE POST-CONVICTION PROCEEDINGS

In Ground Four Petitioner argues that his post-conviction proceedings were "violative of the basic due process clause of the federal constitution and the decisions therefrom are clearly contrary to Supreme Court determination." Petition, p. 11 (capitalization altered). He contends that the Oklahoma Court of Criminal Appeals' resolution of his post-conviction claims without "briefings, hearings, or response(s) . . ." deprived him of due process as did the finality of the Oklahoma Court of Criminal Appeals' determination. Id.

Respondent reads Ground Four as a "nothing more than a request for this Court to hold an evidentiary hearing . . ." and has focused his argument on whether Petitioner should be granted an evidentiary hearing. Response, p. 11.

"[N]o constitutional provision requires a state to grant post-conviction review." Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (citing Pennsylvania v. Finley, 481 U.S. 551, 557 (1987)). Thus, a due process challenge to a state's post-conviction procedures "fail[s] to state a federal constitutional claim cognizable in a federal habeas proceeding." Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); accord Sellers, 135 F.3d

15

at 1339 (holding that an alleged deprivation of due process based on the state appellate court's refusal to grant post-conviction review was not cognizable on federal habeas corpus "because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration.").

Because Petitioner's request for an evidentiary hearing will be considered shortly, the undersigned has read Petitioner's Ground Four argument as a due process challenge to his state post-conviction proceedings. However, as such claims are not cognizable in a federal habeas action, the claim provides no basis for granting relief.

### E.    INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground Five, Petitioner contends that he was denied the Sixth Amendment right to the effective assistance of trial counsel through "conflict of interest and or divided loyalties . . . ." Petition, p. 14(a) (capitalization altered). Petitioner's only allegations in support of these claims are that trial counsel "decided to stipulate and enter into agreement with the state that the court accepted that was not supported by due process of law" and (1) " failed to ask requested questions to state witnesses, (2) induced [a] waiver of jury trial based on a false promise of less[e]r sentence, (3) refuse[d] to allow Petitioner to testify in [his] own defense, (4) stipulated to [an] illegal sentence, and (5) failed to advise Petitioner on advice of counsel defense." Id.; Brief in Support, pp. 11-12.

In Ground Seven, Petitioner contends that appellate counsel rendered ineffective assistance and supports this claim with allegations that his appellate attorney's performance was deficient because he did not consult Petitioner about the issues to be raised on direct appeal and failed to file a motion to expand the record on direct appeal to

include evidence relevant to the effectiveness of trial counsel's assistance.  Petition, p. 14(b); Brief in Support, p. 13.

Petitioner raised these claims for the first time in his application for state post-conviction relief.  Applying Strickland v. Washington, 466 U.S. 668 (1984), the Oklahoma Court of Criminal Appeals determined that Petitioner failed to establish that trial and appellate counsel performed deficiently or that "the result of his appeal was not reliable and fair."  Jackson, No. PC-2006-1034, p. 2.  Response, Ex. 6.  Respondent contends that the Oklahoma Court of Criminal Appeals' conclusion was not contrary to or an unreasonable application of Strickland.  Response, pp. 15, 17-18.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial.  Strickland, 466 U.S. at 687.  Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." Id. at 688. Errors are prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time.  Id. at 689.  There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance."  Id.  Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently.  Id. at 697.

17

Additionally, although a pro se litigant is entitled to a liberal construction of his pleadings, he is obligated nonetheless to "state the facts supporting each ground." Rule 2(b), Rules Governing Section 2254 Cases.  The broad reading of the petition does not relieve a petitioner "of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). "[N]aked allegations" in a habeas petition are insufficient to establish an entitlement to relief. Ruark v. Gunter, 958 F.2d 318, 319 (10th Cir. 1992) (per curiam).

Petitioner has failed to allege sufficient facts to support his claim that trial counsel's performance was so defective and prejudicial it deprived him of the right to the effective assistance of counsel because he has not explained the facts relevant to the deficiencies alleged.  Petitioner's failure to elaborate on his claims renders them impossible to evaluate and relief should be denied on that basis.

However, it is clear from the record that Petitioner's trial counsel's strategy was to attempt to get the drug evidence suppressed.  An evidentiary hearing was held over a two day period on counsel's motion to suppress in which Petitioner's counsel called both state troopers who were involved in the arrest to testify.  Trial counsel vigorously examined the troopers, tried to attack their credibility on certain fact issues and argued that there was no probable cause for the traffic stop.

While trial counsel was unsuccessful on getting the evidence suppressed, the lawyers were able to preserve the issue for appeal and more importantly, were able to still get an agreement from the State to amend one of the counts to a lesser included charge and to only allege one prior felony for sentence enhancement purposes instead of two.

18

Relief should be denied on Petitioner's claim of ineffective assistance of appellate counsel as well.  Petitioner suggests that appellate counsel should have asserted"legal" and "actual" innocence claims on direct appeal.  Brief in Support, p. 13.  When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, the merits of the omitted issue should be examined.  "If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." United States v. Cook, 45 F.3d 388, 393 (10th Cir. 1995) (quotations and citation omitted).

Claims of legal and actual innocence depend upon the existence of newly discovered evidence demonstrating innocence.  See Cummings v. State, 970 P.2d 188, 190 (Okla. Crim. App. 1998).  Petitioner has not identified what newly discovered evidence proves his innocence.  Accordingly, it is impossible to evaluate these claims' potential for success on direct appeal or assess whether appellate counsel's failure to advance the arguments was objectively unreasonable.

Similarly, Petitioner has failed to show prejudice stemming from appellate counsel's failure to seek expansion of the record on appeal.  Since Petitioner has not described the evidence supporting his claim of ineffective assistance of trial counsel, there is no way to determine whether this evidence, had it been presented to the Oklahoma Court of Criminal Appeals, would have led to a different result on direct appeal.  However, appellate counsel raised the three strongest arguments on appeal and filed a thorough well-argued brief in support.  Accordingly, the ineffective assistance of counsel claims Petitioner raises in Grounds Five and Seven do not support a finding that he is entitled to federal habeas relief.

F.      **ACTUAL INNOCENCE**

In Ground Six, Petitioner contends that he is "actually innocent" of the sentences imposed.   Petition, p. 14(a).   Petitioner raised this claim in his application for post-conviction relief where it was rejected because the Oklahoma Court of Criminal Appeals viewed it as res judicata.   See Jackson, No. PC-2006-1034, p. 2.   Respondent too has read Petitioner's actual innocence claim as an attack upon the length of his sentence and argues that it should be rejected for the same reasons that Ground Three provides no basis for relief.   Response, p. 17.

"[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus." LaFevers v. Gibson, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001); see also Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").   Since a freestanding claim of actual innocence is not a basis for federal habeas relief, Ground Six does not warrant relief.

IV.   **EVIDENTIARY HEARING**

Petitioner has requested an evidentiary hearing.   Petition, p. 15; Reply, p. 2.   A habeas court's authorization to hold an evidentiary hearing is limited.   See 28 U.S.C. § 2254(e)(2).   "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing" on the claim unless the applicant shows that it relies on: (1) "a new rule of constitutional law, made retroactive to

20

cases on collateral review by the Supreme Court, that was previously unavailable;" or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." <u>Id.</u> § 2254(e)(1), (2)(A)(i)-(ii).  A petitioner fails to develop his claim if "there is a lack of diligence, or some greater fault" on his part. <u>Young v. Sirmons</u>, 486 F.3d 655, 679 (10th Cir. 2007) (quoting <u>Williams</u>, 529 U.S. at 432).  Even if a petitioner crosses this hurdle, before he is entitled to an evidentiary hearing he must show that the facts underlying his claim would "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." <u>Id.</u> § 2254(e)(2)(B); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1323 (10th Cir. 2000).

Petitioner did not diligently seek to develop a factual record of his claims in state court because he did not attempt to have additional evidence pertaining to his claims included in the record on direct appeal.  Brief in Support, p. 13.  However, Petitioner did seek an evidentiary hearing in connection with his state application for post-conviction relief.  Response, Ex. 4, p. 15.  To the extent this could be considered the diligent pursuit of the factual development of his claims, Petitioner still has not shown that the facts underlying his claim would establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty.  Under these circumstances, a habeas petitioner is not entitled to a hearing and the Court should deny Petitioner's request.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by January 9, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 20th day of December, 2007.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE